IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| SOUTHEASTERN TEXTILE MACHINERY, INC., | Case No. 4:05CV00066 |
| Plaintiff, | **Memorandum Opinion** |
| v. | By: Jackson L. Kiser |
| H. WARSHOW & SONS, INC., | Senior United States District Judge |
| Defendant. | |

Before me now is Defendant H. Warshow & Sons, Inc.'s ("Defendant") Motion to Transfer Venue to the Eastern District of Virginia, Richmond Division ("Motion to Transfer Venue"). Both Plaintiff Southeastern Textile Machinery, Inc. ("Plaintiff") and Defendant have briefed the issues and oral argument was held before this Court on January 17, 2006. The motion is therefore ripe for decision. For the reasons stated herein, Defendants' Motion to Transfer Venue is **GRANTED**.

## I.    STATEMENT OF THE CASE

Plaintiff is a Virginia corporation that buys and sells used textile machinery and equipment. Defendant is a Delaware corporation whose principal place of business is in New York. Defendant manufactures and sells fabric and also owns a textile mill in Tappahannock, Virginia. According to Plaintiff's Complaint, the parties entered into a contract that called for

1

Plaintiff to purchase looms and related equipment from Defendant's plant in Tappahannock. Tappahannock is in Essex County which is located in the Eastern District of Virginia, Richmond Division. All of Defendant's Virginia employees work at the Tappahannock plant. The negotiations leading up to the alleged contract were handled by phone between the parties' offices in Danville and New York and also on site in Tappahannock. To that end, on August 30, 2005 Plaintiff's president, Thomas Aiken ("Aiken") traveled to the Tappahannock plant to examine the equipment and, after the examination, prepared a purchase order of $477,700. Aiken later returned to the Tappahannock plant on September 27 and October 24 to discuss the terms of the sale in person with the Tappahannock employees and via conference call with Defendant's president Henry Warshow ("Warshow") who works in New York.

The purchase order was faxed from Aiken's Danville office to Defendant's office in New York on September 1, 2005. Defendant returned its invoice for the equipment the next day. Consistent with the terms of the purchase order, Plaintiff initiated a wire transfer for 10% of the total cost - $47,700 - on September 9, 2005 from a bank in Danville. Aiken later met with Warshow at his New York office on October 10, 2005. At this meeting, Warshow told Aiken that Defendant intended to sell the equipment to another party because Plaintiff would not agree to the terms of sale. Aiken objected and this suit was subsequently filed. The equipment was ultimately sold to a third party and shipped to Asia.

## II.   PROCEDURAL BACKGROUND

Plaintiff originally filed this case in Danville Circuit Court on October 27, 2005. The Bill of Complaint sought an injunction and specific performance or, in the alternative, $150,000 in damages, for Defendant's alleged breach of contract. Defendant timely removed the case to

2

this Court on November 18, 2005 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  On the same day, Defendant also filed its Motion to Transfer Venue.  Plaintiff filed its Memorandum in Opposition on December 13, 2005 and Plaintiff filed its Reply Memorandum on December 20, 2005.  Both parties were heard at oral argument before this Court on January 17, 2006.  Thus, the matter is now ripe for decision.

### III.  LEGAL STANDARD

28 U.S.C. § 1404(a) states that "[F]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  It is well settled that "decisions whether to transfer a case pursuant to § 1404(a) are committed to the discretion of the transferring judge."  *Brock v. Entre Computer Centers Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991).  Transfer under § 1404(a) may be done even when jurisdiction and venue in the present forum are proper under 28 U.S.C. § 1391.  For purposes of a diversity case such as this, § 1391(a) states that venue is proper in the transferee court if it is either (1) a judicial district where the defendant resides or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

Ordinarily, the plaintiff's choice of forum should be given great deference and it is the defendant's "burden to disturb the plaintiff's choice of forum by showing that the balance of equities is in [its] favor [and] that judicial economy and convenience to all parties favor suit in another forum."  *Glamorgan Coal Corp. v. Ratners Group, P.L.C.*, 854 F.Supp. 436, 437 (W.D.Va. 1993).  However, "the deference given to plaintiff's choice is entitled to less weight where there is little to connect the chosen forum with the cause of action."  *Id.*, (*citing Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702

F.Supp. 1253, 1256 (W.D.Va. 1988)).

In addition to considering the amount of deference to give to the plaintiff's choice of venue, federal courts in Virginia often consider a variety of factors that help determine whether the interests of justice would be served by transferring a case to a different venue. These factors are : "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) systemic integrity; (4) fairness; (5) the availability of compulsory process; (6) the cost of obtaining the attendance of witnesses; (7) ease of access to sources of proof; and (8) the interests in having local controversies decided at home." *Optical Cable Corp. v. Massachusetts Elec. Const. Co.*, 21 F.Supp.2d 582, 592 (W.D.Va.,1998). "The weight given to these factors should be commensurate with the degree each impacts the policy behind § 1404(a), that is, to make the trial easy, expeditious and inexpensive." *Id.,* (*citing Glamorgan*, 854 F.Supp. at 437-38).

## IV.     DISCUSSION

Defendant has based its Motion to Transfer Venue on two related bases. First, Defendant argues that the only connection between this lawsuit and the Western District of Virginia is that Plaintiff's business is located in Danville. Second, Defendant argues that Danville Circuit Court was not a proper venue for Plaintiff's original state court filing. I find both of these arguments persuasive in resolving the question of whether the interests of justice under § 1404 would be better served by transferring this case to the Eastern District of Virginia. I will discuss the eight § 1404 factors in turn.

### (1)     The Convenience of the Witnesses

The ability to conduct a trial in a manner that does not "unduly burden" the witnesses is
4

of central importance in making a trial easy, expeditious, and inexpensive. *Kollmorgen*, 169 F.Supp. 2d 538. In the present case, I believe that this factor favors neither Plaintiff nor Defendant. Defendant strenuously argues in its briefs and at oral argument that its witnesses in Tappahannock would be unduly burdened by coming to Danville because Danville is four hours away whereas Richmond is approximately an hour away.[1] However, the evidence suggests that Defendant's Tappahannock employees played little if any role in the *breach* of the alleged contract. That issue, it appears, would be primarily resolved by the testimony of the parties' presidents, Aiken and Warshow. Because the Tappahannock employees would play a secondary role, at best, in resolving the litigated issue, their convenience is not a persuasive factor in this case. Plaintiff, for its part, has not offered any potential non-party witnesses. The witness convenience factor, therefore, does not bear on my ultimate decision.

**(2)    The Convenience of the Parties**

Like the witness convenience factor, I find that the party convenience factor is actually a non-factor in this case. Defendant asserts that compelling its New York party-witnesses such as Warshow to travel to Danville would be much more inconvenient than compelling them to travel to Richmond. In its briefs, Defendant suggests that airfare from New York to Richmond is cheaper and that the Richmond airport is closer to the Richmond courthouse. In contrast, says Defendant, the nearest airport to Danville is an hour away in Greensboro, NC which would require not only a longer commute, but the necessity of renting a car. However, at oral argument Defendant's counsel admitted that she only assumed that airfare to Richmond would be cheaper.

---

[1] Defendant has stated that by the time this case comes to trial, the Tappahannock plant will have ceased operations. Thus, the Tappahannock employees will be treated as non-party witnesses in this analysis.

5

In addition, it seems that in either case the New York party-witnesses would have to rent a car, get hotel rooms, and eat at restaurants. In sum, there is nothing to substantiate Defendant's argument that it would be more convenient to travel from New York to Danville as opposed to Richmond.

Plaintiff, on the other hand, argues that its party-witness, Aiken, would be inconvenienced by having to travel to Richmond for trial. In essence, Plaintiff argues that as a small Danville business, its business operations would be seriously disrupted if the case were moved to Richmond and Aiken were compelled to attend the proceedings there. I find the logic espoused in *Intranexus Inc., v. Siemens Medical Solutions Health Servs. Corp.*, 227 F. Supp.2d 581 (E.D. Va. 2002) undercuts this argument substantially. In that case, the court found that if the business' president were forced to attend trial, it would disrupt his business no matter which venue the case was tried. *Id*., at 584. Also undercutting Plaintiff's argument is the undisputed fact that Aiken traveled to Tappahannock on multiple occasions and also traveled to New York; if Plaintiff's business operations were not disrupted while he was away on those trips, there is no reason to assume that Plaintiff's business operations would be hampered by attending trial in Richmond. Thus, because the arguments raised by both parties on this factor are illusory, I find that the party convenience factor does not weigh in either party's favor.

**(3) & (4)     Systemic Integrity and Fairness**

In this case, the factors of systemic integrity and fairness overlap to a substantial degree and so will be discussed together. It is a fundamental principle of law that determining the proper venue in the federal system is a question of federal law. *See*, 28 U.S.C. §§ 1332, 1441, and 1446; *Leroy v. Great Western United Corp*., 443 U.S. 173, 183 (1979). There are, however,

6

practical considerations of timing and limitations of relief available to a defendant who is sued in an improper state court venue and wishes to remove the case to federal court. Chief among these limitations is §1446(b)'s requirement that the notice of removal "shall be filed within thirty days after the receipt by the defendant...of a copy of the initial pleading." If a defendant opts to challenge state court venue in state court, he will likely not have time to remove the case to federal court if his challenge fails. On the other hand, if the defendant removes the case to federal court and either challenges venue or moves for a change of venue there, the defendant could be forced to, in effect, waive a viable challenge to venue in state court. Federal venue and removal laws are not intended to put defendants in such a position; these laws are premised on the assumption that venue in the original state court was proper to begin with. Defendant in this case was faced with such a Hobson's choice and both systemic integrity and fairness weigh strongly in favor of transferring venue to the Eastern District.

While I am not bound by state venue law, I find it persuasive in this case. Virginia venue is divided into preferred and permissible venues that are governed by Va. Code §§ 8.01-261 and -262, respectively. In short, a plaintiff may only file suit in a permissible venue when the preferred venue statute does not apply. In its Complaint, Plaintiff sought an injunction to keep Defendant from selling the equipment at issue. An injunction falls within the preferred venue statute and because the equipment at issue was located in Tappahannock, venue would have to be laid in Essex County Circuit Court, not Danville Circuit Court. *See*, Va. Code § 8.01-261(15)(c). The record is unclear whether the equipment was sold prior to the filing of Plaintiff's Complaint. If the equipment were sold after Plaintiff's filing, this would weigh strongly in favor of transferring venue. If, on the other hand, the equipment were sold before

7

Plaintiff's filing, the injunction claim would have been moot and preferred venue would not have been available.

But even if the preferred venue statute did not apply, Virginia's permissible venue statute has much persuasive value that weighs in favor of Defendant's motion. Plaintiff has argued that venue could properly be laid in Danville Circuit Court under § 8.01-262(4) which states that it is proper to lay venue "wherein the cause of action, or any part thereof, arose." Virginia law is clear that "a cause of action for breach of contract may be brought in the jurisdiction where the contract is made, or in that in which a breach occurs." *Big Seam Coal Corp. v. Atlantic Coast Line R.R. Co.*, 196 Va. 590, 593 (1955). It seems beyond question that the breach, if any, occurred in New York when Warshow allegedly told Aiken that Defendant was selling the equipment to another party. Thus, Plaintiff's argument hinges on Danville being the place where the contract was made. Virginia law has long held that the place of contracting is the place where the last act occurred that made the contract binding. *See*, *Wellmore Coal Corp. v. Gates Learjet Corp.*, 475 F.Supp. 1140, 1144 (W.D. Va. 1979). Here, if any contract was made at all, it would necessarily have been made when Defendant signed the invoice that acknowledged Plaintiff's purchase order. This act occurred in New York. Under Virginia law, the contract was both made and breached if anywhere, in New York, not Danville.

The remaining permissible venues would be in either Essex County where Defendant regularly conducts substantial business activity under § 8.01-262(3) or in Richmond where Defendant has appointed a registered agent under § 8.01-262(2). Though I am not bound by state venue law, I find it persuasive to both the systemic integrity and fairness inquiries that retaining venue in the Western District would essentially mean that Plaintiff would reap the

8

benefit of trying the case in Danville even though Danville was not a proper venue in the original state court action. Simply put, there is little fairness or integrity in a system that allows a plaintiff to put a defendant in such a position. Thus, these factors weigh heavily in favor of granting Defendant's motion.

### (5) The Availability of Compulsory Process

This factor is not at issue in this case. Both the transferee and transferor venue are located in Virginia. Thus, compulsory process rules would not be affected whether the case were tried in Danville or Richmond.

### (6) The Costs of Obtaining Witness Attendance

As with the fifth factor, above, the costs associated with witness attendance will be minimally affected, if at all, whether the case remains in Danville or is transferred to Richmond. *See* Fed. R. Civ. P. 45(c). A court may command witnesses who reside in Virginia to travel to either location to participate in the trial. The costs associated with obtaining the New York witnesses' attendance will also be substantially similar at either location. As such, this factor does not weigh in my consideration.

### (7) Ease of Access to Sources of Proof

Both parties have represented that there is minimal written evidence in this case. There is therefore nothing to suggest that the parties will have any more difficulty building their case in Richmond as opposed to Danville. This factor is inapposite to my decision.

### (8) Local Interests

There are strong interests of justice in having local disputes resolved before a local court. The facts of this case make clear that the Western District's only connection to this case is that

Plaintiff's business is located in Danville. The mere facts that Plaintiff received various faxes from Defendant at its Danville office, that Aiken communicated with Warshow from Danville, or a Danville bank initiated a wire transfer to Defendant are attenuated at best. These facts do not support Plaintiff's argument that the Western District has a meaningful connection to this case. As such, I find that there are no local interests to be served by retaining venue in the Western District and that this factor weighs in favor of transfer.

## V.     CONCLUSION

None of the § 1404 factors listed above weigh in favor of retaining the case in the Western District while three factors weigh in favor of transferring the case to the Eastern District. Therefore, for the reasons stated above, Defendant's Motion to Transfer Venue to the Eastern District of Virginia, Richmond Division will be **GRANTED**.

The Clerk is directed to transfer this case to the Eastern District of Virginia, Richmond Division. The Clerk is further directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

ENTERED this 27th day of January, 2006.

Senior United States District Judge